IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>CARLOS DIDIER MARROQUIN ESCOBAR,</td><td>*</td><td></td></tr>
<tr><td>Petitioner,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Civ. No. 1:26-cv-00590-PX</td></tr>
<tr><td>KRISTI NOEM <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td>Respondents.</td><td>*</td><td></td></tr>
<tr><td></td><td>***</td><td></td></tr>
</table>

**MEMORANDUM ORDER**

Pending is Petitioner Carlos Didier Marroquin Escobar ("Marroquin Escobar")'s Petition for a Writ of Habeas Corpus. ECF No. 1. After full briefing and a hearing on the merits, the Petition is granted.

Marroquin Escobar is a citizen of El Salvador who came to the United States in 1981 when he was four years old. ECF No. 1 ¶¶ 11–12. In 1989, Marroquin Escobar successfully adjusted his status to that of legal permanent resident. ECF No. 12-3 at 1. Nearly twenty years later, Marroquin Escobar sustained a conviction for a drug-related offense. Thereafter, in 2019, an Immigration Judge ("IJ") ordered him removed to El Salvador, but also granted withholding of removal based upon a showing that Marroquin Escobar would more likely face torture or persecution there. ECF No. 1 ¶¶ 13–14.

In connection with the 2019 removal proceedings, Marroquin Escobar was held in the custody of Immigration and Customs Enforcement ("ICE"). ECF No. 1 ¶ 14. Although the Petition suggests that Marroquin Escobar was detained between July and September 2019, another document suggests he was detained for a shorter period, only 28 days. *Id.*; ECF No. 12-5. In any

event, subsequent to the IJ's grant of withholding relief, ICE released Marroquin Escobar on an order of supervision.  ECF No. 1 ¶ 15; ECF No. 12-4; ECF No. 12-5.  Marroquin Escobar has followed all release conditions since. He has received "category 18" Employment Authorization that is valid through 2029.[1]  ECF No. 1 ¶ 17.

On February 9, 2026, Marroquin Escobar appeared for his routine check-in appointment at the ICE Baltimore Field Office.[2]  ICE officers immediately detained him.  ECF No. 1 ¶ 18. While in detention, ICE served two notices on him: a "Notice of Revocation of Release" in letter format ("letter notice") and a "Notice of Removal" which stated nothing more than "[t]his letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to Mexico."  ECF Nos. 12-6 & 12-7.  The letter notice stated:

> [Y]our order of supervision *has been revoked* and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time.  This decision *has been made* based on a review of your official alien file and a determination that there are changed circumstances in your case.

ECF No. 12-7 (emphasis added).

The letter went on to explain the reason why ICE has "determined" Marroquin Escobar's expeditious removal was warranted.  The explanation was riddled with errors and nonspecific boilerplate.  It stated:

---

[1] 8 U.S.C. § 1231(a)(7)(A) provides that "[n]o alien ordered removed shall be eligible to receive authorization . . . unless the Attorney General makes a specific finding that (A) the alien cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien, or (B) the removal of the alien is otherwise impracticable or contrary to the public interest."  Further, 8 C.F.R. § 274a.12(c)(18) states that the district director, in his or her discretion, may grant employment authorization to a noncitizen released on an order of supervision if "the alien cannot be removed due to the refusal of all countries designated by the alien or under section 241 of the Act to receive the alien, or because the removal of the alien is otherwise impracticable or contrary to the public interest."  The district director may also take into account such factors as "the anticipated length of time before the alien can be removed from the United States," in considering whether to grant employment authorization.  § 274a.12(c)(18)(iii).

[2] The routine appointment had been set for February 11, 2026, but Marroquin Escobar checked in two days early out of an abundance of caution.

2

> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On *July 9, 2026,* you were ordered removed from the United States and granted Withholding or [sic] Removal to *Mexico* by a U.S. Department of Justice immigration judge. You are subject to an administrative final order of removal. At this time, ICE is taking steps to remove you to *Mexico*.

> Based on the above, and pursuant to 8 C.F.R. § 241.4/8 C.F.R. § 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation. You may submit any evidence or information you wish to be reviewed in support of your release. If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

*Id.* (emphasis added).

The letter was unsigned, and the place for the Acting Field Office Director's signature included a misspelled version of Vernon Liggins' name. *Id.*

Three days later, on February 12, 2026, Marroquin Escobar filed his Petition in which he alleges that Respondents provided patently inadequate notice and no opportunity to be heard prior to detaining him. ECF No. 1 ¶¶ 67–74.[3] On the same day, Marroquin Escobar, through counsel, asserted his reasonable fear of removal to Mexico. ECF No. 1 ¶ 12. On March 2, an asylum officer interviewed Marroquin Escobar and checked a pre-printed box on a form stating that Petitioner "did not establish that it is more likely than not that you will be persecuted or tortured in Mexico." ECF No. 15-1. The officer did not explain the basis for this determination. *Id.*

Nearly a month after ICE took Marroquin Escobar into custody, Respondents attached to their briefs a second "Notice of Revocation of Release" (the "second notice") dated March 6, 2026. ECF No. 12-5. Unlike the letter notice, the second notice is a preprinted form which permits the signing official to indicate under which regulatory framework ICE intends to revoke a noncitizen's

---

[3] "Hearing Transcript" refers to an unofficial transcription of the hearing provided by the official court reporter as a courtesy.

release: 8 C.F.R. § 241.4(*l*) or § 241.13(i).  *Id.*  The second notice checked the box for revoking release under 8 C.F.R. § 241.13(i) and the box indicating that "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future;" that "[o]n 7/02/2019, you were ordered removed to El Salvador; but you were granted withholding of removal to El Salvador;" and that "[y]our case is under review for removal to an alternate country." *Id.*  The second notice further states that on February 9, 2026, "you ~~will be~~ were afforded an informal interview at which you will be given an opportunity to respond to the reasons for this revocation.  You may submit any evidence or information you wish to be reviewed in support of your release." *Id.*  ICE Officer Nikita Baker ("Baker") signed the second notice as "Acting Field Office Director," but as of that date, Baker was not the Acting Field Office Director, Vernon Liggins was. *Id.*  Nowhere did the second notice inform Marroquin Escobar that ICE was intending to remove him to Mexico.

The last document of particular relevance is the form entitled "Alien Informal Interview." ECF No. 12-8.  This form is intended to reflect the substance of an ICE officer's interview with a noncitizen about "the reasons for revocation of his . . . order of supervision stated in the notification letter." *Id.*  For Marroquin Escobar, the contents of the document suggest that Deportation Officer Pierre Fils conducted the interview on February 9, 2026. *Id.*  The space reserved for Marroquin Escobar's comments includes one handwritten word: "No." *Id.*  The signature line for the interviewing officer is stamped "REFUSES TO SIGN," and under the signature line, includes an electronic signature stamp for Officer Fils which reflects a signature date of March 6, 2026. *Id.*

In his Petition, Marroquin Escobar seeks immediate release from detention on several grounds, to include: (1) that continued detention to effectuate lawful removal is not reasonably foreseeable, and thus release is compelled under *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (2)

that ICE detained Marroquin Escobar without notice and an opportunity to be heard, and in violation of its own regulations designed to accord such process under the Fifth Amendment Due Process Clause and the *Accardi* doctrine, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). *Id.* ¶¶ 59–74. Marroquin Escobar also alleges a separate due process violation stemming from Respondents' intended swift removal to Mexico without any meaningful review of his claimed fear of removal to that country. *Id.* ¶¶ 75–79.

Regarding the *Accardi* doctrine challenge, Marroquin Escobar is entitled to immediate release because the Respondents detained him without following the relevant regulations that are designed to ensure he receives a modicum of due process in advance of actually detaining him. "[A]n agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination" if the petitioner can demonstrate "prejudice resulting from the violation." *United States v. Morgan*, 193 F.3d 252, 266–67 (4th Cir. 1999); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Prejudice is "presume[d]" however, where "an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986).

As a preliminary matter, the Court makes clear that the regulatory section applicable to Marroquin Escobar's detention is 8 C.F.R. § 241.4(*l*), *not* § 241.13(i) as the second notice states. Section 241.13(i) applies to noncitizens who have been detained beyond the 90-day removal period following a final order of removal. 8 U.S.C. § 1231; 8 C.F.R. § 241.13(i). The parties agree this provision does not apply and that the *Accardi* analysis should focus on whether ICE complied with § 241.4(*l*) when revoking Marroquin Escobar's release. Hearing Transcript at 27:11–12 ("[The government] think[s] 241.4 is correct.").

Specifically, 8 C.F.R. § 241.4(*l*) requires that such revocation be approved by the District Director, as delegated to the Field Office Director,[4] and only if the Field Office Director concludes that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."  § 241.4(*l*)(2).  The regulation also requires that ICE inform the noncitizen of the reasons for his detention and allow him to be heard upon revocation.  *Id.  See also Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025).  In this case, Respondents failed to afford Marroquin Escobar with any of the articulated protections.

As for the letter notice issued on February 9, 2026, Acting Field Office Director Liggins neither signed the Notice nor made the necessary findings to secure Marroquin Escobar's detention.  *Cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 162 (W.D.N.Y. 2025) (finding that "even if" Assistant Field Office Director had proper authority to revoke release, "there is no evidence that [Assistant Field Office Director] made the findings that a district director is required to make *before* revoking [petitioner's] release.") (emphasis added).  The signature line was instead left blank.  Thus, Marroquin Escobar's detention was not authorized by any ICE official, let alone one with the proper revoking authority pursuant to § 241.4(*l*)(2).

Respondents also do not cure the defect by issuing the second notice issued March 6, 2026.  For one, Respondents had already detained Marroquin Escobar for nearly a month before supposedly giving him the notice and an opportunity to be heard "upon revocation."  This hardly can be considered an adequate pre-deprivation process.  *See* § 241.4(*l*)(1) ("*Upon revocation*, the alien will be notified of the reasons for revocation of his or her release or parole.") (emphasis

---

[4] Separate regulatory authority confers to the ICE Director the power to delegate this determination to Field Office Directors, but not to lower ranked officers.  *See, e.g.*, *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025); *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2841886, at *4 (D. Md. Oct. 7, 2025).

added).  *See also Alcivar Lorenzo v. Raycraft*, No. 1:26-CV-77, 2026 WL 369349, at *6 (W.D. Mich. Feb. 10, 2026) ("[T]he failure to provide Petitioner with notice of revocation and an informal interview promptly after her detention with a meaningful opportunity to contest the reasons for revocation in accordance with 8 C.F.R. § 241.4 and § 241.13 violates Petitioner's right to due process under the Fifth Amendment and requires release.") (collecting cases).

Moreover, even looking to the substance of the second notice, it is deficient in several material respects.  First, it is not signed by Liggins, the Acting Field Office Director.  Although Respondents contend that Liggins did and could delegate his authority to Baker, nothing in the record supports that this supposed delegation occurred or is otherwise lawful.[5]

The second notice also fails to apprise Marroquin Escobar of the grounds for his detention. It does not tell him of the planned removal to Mexico, and misadvises him that he is being detained under the wrong regulation, 8 C.F.R. § 241.13(i).  ECF No. 12-5.  But even if it had included such basic information, Respondents issued the notice a month *after* detaining him.

Nor did ICE give Marroquin Escobar a meaningful opportunity to be heard.  The "Alien Informal Interview" is largely boilerplate and records nothing other than the handwritten word "No."  ECF No. 12-8.  Nor does it memorialize reliably that any such interview took place on February 9 because the interviewing officer did not sign the document until March 6, well after ICE decided to detain him.  This contravenes 8 C.F.R. § 241.4(*l*)(1), which requires that the noncitizen "promptly" be afforded the chance to be heard before his release is revoked.

---

[5] During oral argument, counsel for Respondents seemed to suggest that perhaps a further "delegation memo" exists which would allow Baker to stand in for Liggins while he was out of the office.  Hearing Transcript at 25:17–18.  The Court has recently encountered the identical issue in resolving another matter, *see Vasquez Tejada* v. *Liggins et al.*, 8:26-cv-00952-PX at ECF No. 20 (D. Md. Apr. 20, 2026).  There, Respondents gave no such explanation or even suggested the existence of a "delegation memo."  Nor did Respondents in *Vasquez Tejada* demonstrate the Acting Field Office Director could lawfully delegate his revocation authority under § 241.4(*l*) to a lower officer.  *Id.*

For these reasons, the Court joins the growing chorus of district courts that have concluded Respondents' failure to follow its own regulations concerning revocation of release violates the *Accardi* doctrine. *See, e.g.*, *Samahn v. Noem et al.*, No. 25-CV-25618, 2026 WL 911290, at *6 (S.D. Fla. Apr. 2, 2026); *Ahmed v. Olson*, No. CV 26-89-DLB, 2026 WL 836123, at *5 (E.D. Ky. Mar. 26, 2026); *Sombuoune Virachak* v. *Juan Baltazar et al.*, No. 26-CV-00391-STV, 2026 WL 746285, at *4–5 (D. Colo. Mar. 17, 2026); *Alcivar Lorenzo*, 2026 WL 369349, at *6; *Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *7–8 (M.D. La. Feb. 6, 2026); *Arman Kesheshian v. Kristi Noem et al.*, No. 5:25-CV-03478-MWC-DFM, 2025 WL 4227216, at *5 (C.D. Cal. Dec. 24, 2025); *N.A.L.R. v. Bondi*, No. 4:25-CV-00192-SEB-KMB, 2025 WL 2987239, at *2 (S.D. Ind. Oct. 23, 2025); *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *5 (W.D. Ky. Sept. 4, 2025). Although, "not every technical failure to comply with policies or procedures violates the Constitution," where the regulations safeguard against unconstitutional deprivations of liberty, they must be followed. *Santamaria Orellana*, 2025 WL 2841886, at *5. *See also Ceesay*, 781 F. Supp. 3d at 162; *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *10 (D. Or. Aug. 21, 2025). They were not. As a result, Marroquin Escobar was detained without due process for which the remedy is immediate release.

Accordingly, it is this 24th day of April 2026, by the United States District Court for the District of Maryland, hereby **ORDERED** that:

1.      Petitioner Carlos Didier Marroquin Escobar's Petition for a Writ of Habeas Corpus, ECF No. 1, is **GRANTED**;

2.      Respondents are **DIRECTED** to release Marroquin Escobar on or before **April 25, 2026, at 5:00 PM**, under the same ICE supervision conditions in place prior to his February 9, 2026 detention;

3.      The parties **SHALL** file a Joint Status Report by **<u>April 28, 2026</u>**, to confirm Marroquin

Escobar has been released from detention;

4.      Respondents are **ENJOINED** from re-detaining Marroquin Escobar absent a showing that

they have accorded him notice and an opportunity to be heard, and in compliance with 8 C.F.R. §

241.4(*l*) and related regulations, in advance of any detention;

5.      If Respondents intend to re-detain Marroquin Escobar, Respondents must first file a Status

Report with the Court articulating steps they will take to comply with 8 C.F.R. § 241.4(*l*), related

regulations, and due process, consistent with this Order[6];

6.      Because the Court grants Marroquin Escobar's Petition for the above stated reasons, the

Court need not address the other grounds for relief at this time; and

7.      The Court shall **RETAIN** jurisdiction of this matter to enforce compliance.

/s/
_____
Paula Xinis
United States District Judge

---

[6] Respondents may also seek relief from the temporary injunction barring Marroquin Escobar's removal from the continental United States. Currently, nothing in the record suggests Respondents have taken steps to remove Marroquin Escobar to Mexico or anywhere else. When asked at the hearing about the prospects of such removal, Respondents suggested that they have taken no steps because of the Court's temporary injunction. Respondents have never formally contested that the Court's injunction is necessary for the Court's to retain jurisdiction and preserve the status quo pending resolution on the merits. Merely voicing their non-consent is insufficient. ECF No. 6. Accordingly, any suggestion that Marroquin Escobar's removal has been delayed because of the injunction—rather than Respondents' voluntary inaction—is specious.